SAM CURA V. STATE OF NEBRASKA.

FILED JUNE 27, 1923. No. 23208.

1. **Intoxicating Liquors:** UNLAWFUL POSSESSION: SUFFICIENCY OF EVIDENCE. Defendant was convicted under the state prohibitory law of unlawfully having in his possession certain stills for the manufacture of intoxicating liquor, 61 gallons of whiskey and 31 barrels of mash. The evidence examined, and *held* that the verdict is amply supported by the evidence.

2. **Criminal Law:** MOTION FOR NEW TRIAL. Where two or more defendants were informed against jointly, and both were convicted and separate motions for a new trial were filed, and the motion as to one defendant was sustained and as to the other it was overruled, *held,* that, the motions being separate, the defendant whose motion was overruled cannot predicate error upon the court's ruling.

ERROR to the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Claudio Delitala,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lee Basye,* contra.

Heard before MORRISSEY, C. J., LETTON, DEAN and GOOD, JJ., BLACKLEDGE, District Judge.

DEAN, J.

Sam Cura and Joe Pattavina were informed against under the prohibitory law of the state in the district court for Douglas county. In the first count of the information they were charged with the unlawful possession of a still; in the second count with the unlawful possession of mash and material to be used for making intoxicating liquor; and in the third count with the unlawful possession of intoxicating liquor manufactured by them for sale. The jury found both defendants guilty on all counts. Both defendants filed separate motions for a new trial. Pattavina's motion was sustained and subsequently the suit was dismissed as to him and he was discharged. Cura's motion was overruled and he was sentenced to serve 30 days in the county jail and to pay a fine of $600 and costs of suit. Cura prosecutes error from the denial of his motion for a new trial.

When this action was begun Sam Cura and wife, with their three children, lived in a story and a half frame house at No. 1352 South Twentieth street, Omaha. The house has five rooms down-stairs and a large room up-stairs with a light partition in one end.

Frank Williams, a sergeant of police, testified that June 1, 1923, he went with officers Sullivan, Nelson and Wade to defendant's residence about 8 o'clock in the evening and, under command of a search warrant, proceeded to search the house; that on entering he "smelled the mash" and, opening a door, went directly up-stairs where they found three stills, 31 barrels of mash and 61 gallons of whiskey; that the stills were operated on coal stoves with a coil attachment which ran down through a water-barrel, the whiskey coming out at the lower end of the coil; that fires were burning in the stoves at the

time and the stills "were running whiskey;" that they arrested both defendants, "called the patrol wagon and sent the stills and liquor and the two men in;" that kerosene was stirred into the mash and it was destroyed; that only the lower part of the house was occupied as a residence by the Cura family and there was nothing up-stairs except the stills, the stoves, the mash and the whiskey; that the only way to get to the room where the liquors and paraphernalia were found was through the kitchen in the back part of the house by a stairway; that the defendants were in the kitchen when the officers arrived and, upon inquiry, they denied ownership.

The evidence of the sergeant with respect to finding the "three stills in operation" and the 31 barrels of mash and the 61 gallons of liquor was corroborated by Officer Nelson. He added that they discovered "pails, funnels, and buckets," and that the liquor was "corn whiskey." Officer Sullivan corroborated the evidence of the sergeant and in addition testified that there was no furniture up-stairs.

Defendant Cura testified that he rented the house from the owner for $40 a month; that it had five rooms down-stairs and one up-stairs; that his family occupied the lower floor and, May 2, 1922, his wife rented the room up-stairs, unfurnished, to a man named Joe Bedra, whom he never saw but once, for $2.50 a week; that he never went up-stairs after the room was rented, but heard some one moving about the night that Bedra moved in. He admitted that to get the stills, barrels, jugs, stoves and fixtures up-stairs they would have to be carried through the kitchen, but that he never saw Bedra or any other person carry them up and never went up-stairs to see what was going on. He testified that his co-defendant Pattavina was at his house on the afternoon and evening of the arrest, with his family, visiting; that he saw him two or three times a week; that he was sure Pattavina was not operating in the attic; that he never smelled any mash about the house from the first of May to the first of

June; that he knows the odor of strong liquor but never discovered it in his house; that he talked to Bedra in his kitchen about a week after he got the room and he told him where he worked and that was all; that he does not know where Bedra is, but looked for him and could not find him and did not know where he was June 1.

Mrs. Cura testified that she had no knowledge of anything being up-stairs or that any person ever took any of the paraphernalia to the room that was found there by the officers; that she never was up-stairs after she rented the room to Bedra; that she never discovered the smell of mash about the house and did not know that stoves and stills were in active operation, nor that they were in the house, when the officers came.

Joe Pattavina testified that he and his wife and child visited at Cura's house once or twice a week. He denied any knowledge of the liquor, the stills, the stoves and the paraphernalia which the officers found in the attic. He testified: "When I go out there (to Cura's), stay two or three hours and I never smell nothing; that day I was over there afternoon, supper and dinner." On the cross-examination Pattavina testified that the reason for not working the day he was arrested was because he was not feeling well; that he never saw Bedra at Cura's house and that he was never in the attic.

Counsel for defendant argues: "Under the evidence * * * the main question for determination by the jury should have been whether or not Sam Cura and Joe Pattavina, or either of them, were in control of the premises on which the violation of the law was taking place: because, if it was true that the second floor had been rented, and this was entirely for the jury to determine, then Sam Cura would not have been guilty as charged." Counsel, in the belief that the jury should have been so instructed, tendered an instruction substantially to that effect. The court did not err in refusing the tendered instruction.

We think that it would serve no good purpose to take

up time in discussing the evidence at greater length.
It speaks for itself. The verdict seems to respond in
every material respect to the great weight of the evidence.
The jury were plainly instructed, *inter alia,* that before
the defendants could be found guilty the state must prove
beyond a reasonable doubt that they had in their posses-
sion either the equipment, or the mash or the intoxicating
liquor which was set forth in the respective counts of the
information. And this was found by the officers at Cura's
residence in a room in which there was no furniture. If
the evidence of the defendants had been accepted by the
jury the verdict would, of course, have been for acquittal.
But the jury, as triers of fact, *inter alia,* determined the
credibility of the witnesses and it did not accept de-
fendant's version of the facts. And we do not see how the
jury, in the performance of its sworn duty, could have
returned any other verdict. Comp St. 1922, sec. 10186.

Counsel very properly filed separate motions for a new
trial for each defendant and now contends that the court
erred in refusing to sustain Cura's motion. The argument
is that a motion for a new trial is indivisible, and that if
Pattavina was entitled to a new trial Cura should also
have been granted a new trial. In support of his conten-
tion he cites *Dutcher v. State,* 16 Neb. 30. The citation is
not in point because three defendants there moved jointly
for a new trial and the adverse ruling was based on the
ground that a separate motion was not filed in behalf of
the defendant who alleged error. To the same effect is
*Long v. Clapp,* 15 Neb. 417. In the latter case it appears
that the motion reads in part: "And now on this day
come said defendants and separately move the court for
a new trial." This was followed by the court's terse
observation: "But the use of these words does not alter
the fact nor make that two motions which was but one"—
citing *Dunn v. Gibson,* 9 Neb. 513. The court did not
err in overruling Cura's motion.

The record is without reversible error. The judgment is

AFFIRMED.